IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TANIA CONSULTING SERVICES, INC., )
et al.,                           )
                                  )
         Plaintiffs,              )
                                  )
    v.                            )    No. 06 C 3562
                                  )
THE CITY OF CHICAGO,              )
et al.,                           )
                                  )
         Defendants.              )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we grant Defendants' motion to dismiss. We also decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the instant action.

## BACKGROUND

Plaintiffs Tania Consulting Services, Inc. ("TCS") and Nihad Albahrani ("Albahrani") allege that TCS is a sole proprietorship owned by Albahrani. Plaintiffs contend that TCS is a professional design and engineering firm that provides

construction management, supervision, and inspection services. TCS has allegedly been certified by Defendant City of Chicago ("City") as a Minority and Women-Owned Business ("MBE/WBE") and TCS has allegedly applied for construction management program contracts with the Chicago Department of Transportation ("CDOT"), which is a department within the City. Plaintiffs claim that TCS has applied for contracts with CDOT for five years and that TCS has received two contracts. Plaintiffs have alleged that CDOT has a custom of awarding contracts to "non-Middle Eastern firms" that are owned by males and individuals who are relatives of CDOT employees and that TCS was discriminated against in the contract selection process. (SA Compl. Par. 19). Plaintiffs also contend that the City has not paid $5,041.44, which is allegedly owed to TCS for the contracts that it was awarded, and that the City has not allowed Plaintiffs to work on the contracts that were awarded to TCS.

Plaintiffs brought the instant action against the City and included in the second amended complaint claims against Defendants Thomas H. Powers, Christopher A. Kent, and Robert Loomis (collectively referred to as "Individual Defendants"). Plaintiffs' second amended complaint includes a claim alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d)-2000(d)(7) ("Title VI") against the City and Individual Defendants (Count I), a claim alleging violations of 42 U.S.C. § 1981 ("Section1981") against the City and Individual Defendants (Count II), a claim alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") against the City (Count III), a claim alleging violations of

the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) against the City (Count IV), a claim alleging violations of the Illinois Civil Rights Act of 2002, 740 ILCS 23/1 *et seq.*, ("ICRA") against the City (Count V), a claim alleging violations of the Public Works Employment Discrimination Act, 775 ILCS 10/0.01, *et seq.,* ("PWEDA") against the City and Individual Defendants (Count VI), a breach of contract claim against the City based upon a failure to pay amounts owed on the contracts awarded to TCS (Count VII), a breach of contract claim against the City based upon wrongfully removing TCS from the contracts that it was awarded (Count VIII), and an intentional interference with contract ("IIC") claim against Individual Defendants (Count IX). Defendants move to dismiss the instant action.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the

"plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

**DISCUSSION**

I. Title VI Claims (Count I)

Defendants contend that Plaintiffs have failed to state a Title VI claim. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A plaintiff bringing a Title VI claim must establish that the defendant engaged in "intentional discrimination." *Brewer v. Board of Trustees of University of IL*, 2007 WL 841039, at *12 (7th Cir. 2007)(citing *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001)).

In the instant action, Plaintiffs allege that many of the CDOT construction projects for which the contracts are awarded receive federal funding. (SA Compl.19). Plaintiffs contend that Defendants discriminated against TCS because TCS is owned by a woman, is not owned by a relative of a CDOT employee, and is owned by a person of Middle Eastern descent. (SA Compl. Par. 4, 19). We first note that there are no facts or allegations in the second amended complaint that indicate that the alleged discrimination is intentional. There are no facts that enable one to infer that there was intentional discriminatory conduct on the part of CDOT. Thus, Plaintiffs have failed to allege intentional discrimination, which is required to establish a Title VI claim.

To the extent that Plaintiffs allege that CDOT discriminated against women

and unfairly gave contracts to relatives of CDOT employees, the Title VI claim fails on its face since Title VI only prohibits discrimination based upon "race, color, or national origin. . . ." 42 U.S.C. § 2000d; *see also Stevens v. Skenandore*, 2000 WL 1069404, at *2 (7th Cir. 2000)(stating that the plaintiff failed "to state a claim under Title VI, which prohibits discrimination based only on race, color or national origin" since the plaintiff alleged "discrimination on the basis of a learning disability and thus his claim [wa]s not cognizable under Title VI").

Plaintiffs' allegation that the contracts "are allocated to male and non-Middle Eastern firms" is directly contradicted in the next paragraph of the second amended complaint, which states that TCS, a firm owned by a person of Middle Eastern descent, was awarded contracts by CDOT. (SA Compl. Par. 4, 19-20). In addition, we note that Plaintiffs go into detail regarding a variety of favorable treatment given by CDOT to consultants that are "recent arrivals to the United States" and to firms such as Shah Engineering and Omega & Associates, whose principal is Chandra N. Prassad. (SA Compl. Par. 29-31).

Plaintiffs base this case on their contention that CDOT only awards contracts to "favored firms." (SA Compl. Par. 32). It is clear that such a reference is to firms that have close ties with CDOT. Plaintiffs once again contradict themselves and first allege in a conclusory fashion that there was discrimination against female owned firms, but later in the second amended complaint contend that eight female owned firms were given more preferential treatment than TCS. (SA Compl. Par. 28). It is

thus clear that Plaintiffs' complaint about contracts going to "favored firms" is not about gender discrimination, but rather is about contracts going to firms that have close ties or connections with CDOT. This fact is also illustrated by Plaintiffs' complaint that relatives of CDOT employees received contracts. However, such conduct based upon the connections of firms and ties with CDOT employees is not national origin discrimination and does not violate Title VI. Therefore, we conclude that Plaintiffs have failed to state a Title VI claim and we grant the motion to dismiss the Title VI claim (Count I).

II. Section 1981 Claims (Count II)

Defendants move to dismiss the Section 1981 claims against the City and the Individual Defendants.

A. Section 1981 Claims Against the City

The City argues that Plaintiffs have failed to allege facts under which the City could be held liable pursuant to Section 1981. Plaintiffs allege that the City has "an unofficial policy, custom and practice" of not awarding CDOT contracts to women-owned and minority-owned firms. (SA Compl. Par. 19). In order to establish municipal liability for a Section 1981 claim, a plaintiff must show that "execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005)(quoting *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978)); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)(applying *Monell* analysis to Section 1981 claims); *Looper Maint. Serv. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999)(stating that the plaintiff bringing a Section 1981 claim had to "'show that the violation of his right to make contracts protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases'")(quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)). This policy or custom can be shown: "'(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.'" *Calhoun*, 408 F.3d at 379 (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)); *see also McCormick*, 230 F.3d at 324 (applying three prong analysis from *McTigue* to Section 1981 claims). The City argues that Plaintiffs failed to point to any allegations that indicate that Plaintiffs did not receive any CDOT contracts, nor that Plaintiffs have pointed to any allegations that indicate that the basis for TCS not receiving any alleged misconduct was due to a City policy, practice, or custom.

8

Plaintiffs admit several instances in which they were either awarded contracts by CDOT or invited to submit bids to CDOT projects. Plaintiffs admit that TCS is a certified MBE/WBE consultant with the city, a certification that is determined by the City. Plaintiffs admit that they were previously awarded two contracts by the City, (SA Compl. Para. 17, 20, 21), and that the sum of "payments by the city were . . . "$74,448.42" for the work performed for the City under those two contracts. (Ans. 12); (SA Compl. Par. 17, 20). Finally, Plaintiffs admit that even after speaking to CDOT officials about being awarded future contracts, CDOT invited TCS to "submit amendments to the contracts to obtain an additional $82,261.44 to complete the project for IDOT." (SA Compl. Par. 26). Thus, Plaintiffs have alleged several instances in which the City awarded Plaintiffs contracts, or invited Plaintiffs to submit further claims for contracts, when the City was aware of TCS' status as a minority-owned company.

Plaintiffs further admit several instances where other minority-owned companies received contracts from CDOT. Plaintiffs admit that "CDOT has accepted amendments of contracts employing . . . female-owned firms," (SA Compl. Par. 28), and that CDOT has contracted with other consultants that were not of American descent. (SA Compl. Par. 31)(stating that "CDOT has approved of the hiring of . . . recent arrivals to the United States without relevant United States experience"). Finally, as noted above, Plaintiffs fail to identify any individuals of Middle Eastern descent who owned firms that were denied contracts by CDOT.

9

Based on the foregoing, Plaintiffs have acknowledges that companies that were owned by minorities have received contracts from CDOT in the past.

Plaintiffs have not provided any allegations that would indicate that the City's policy or custom was responsible for Plaintiffs not receiving a greater number of contracts than they had already received. Therefore, since Plaintiffs admit that TCS, a minority-owned firm, received contracts from CDOT, that TCS was paid by the city for those contracts, that TCS was invited to submit additional amendments, and that other minority-owned firms received contracts from CDOT, Plaintiffs have failed to plead that there is a "wide-spread practice" of discriminating against female-owned and firms owned by individuals of Middle Eastern descent. *Calhoun*, 408 F.3d at 379. Plaintiffs also fail to allege facts showing a permanent practice. Based on the analysis above, we grant the Defendants' motion to dismiss the Section 1981 claims brought against the City (Count II).

B. Section 1981 Claims Against Individual Defendants

The Individual Defendants argue that Plaintiffs' Section 1981 claim fails because the Individual Defendants do not have the power to contract for the City. Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

10

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). Plaintiffs argue that the Individual Defendants have the power to bind the City into contracts with CDOT since the Individual Defendants assist with the bidding process.

Pursuant to Illinois law, "[e]very contract involving amounts in excess of $10,000 shall be signed by the mayor or his duly designated agent, by the comptroller and by the purchasing agent, respectively, of such municipality." 65 ILCS 5/8-10-10; *see also* 65 ILCS 5/8-10-16(b) (stating that "[t]he purchasing agent shall . . . constitute the sole agent of the municipality in contracting for labor, materials, services, or work, the purchase, lease, or sale of personal property, materials, equipment or supplies, in conformity with the provisions of this Division"). In addition, Illinois law provides that "[n]o department, office, institution, commission, board, agency or instrumentality of any such municipality, or any officer or employee thereof, shall be empowered to execute any purchase order or contract . . . except as herein specifically authorized, but all such purchase orders or contracts shall be executed by the purchasing agent. . . ." 65 ILCS 5/8-10-18. Pursuant to Illinois law, the Individual Defendants are not able to form a binding contract between the City and outside companies, and Plaintiffs have failed to allege that the Individual Defendants have such contracting power. Therefore, Plaintiffs have failed to state Section 1981 claims against the Individual Defendants in their individual capacities.

In addition, Plaintiffs have brought Section 1981 claims against the Individual Defendants in their official capacities as employees of the City. The Seventh Circuit has stated that a claim against a defendant in his official capacity "is the same as a suit against the entity of which the [defendant] is an agent." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 974-75 n.1 (7th Cir. 2000). Since Plaintiffs have named the City as a Defendant, we also find that the Section 1981 claims against the Individual Defendants in their official capacities are redundant. Therefore, based on the analysis above, we grant the Defendants' motion to dismiss the Section 1981 claims brought against the Individual Defendants (Count II).

III. Title VII Claims (Count III)

The City argues that Albahrani's Title VII claim fails because Albahrani is not an employee of the City. Title VII prohibits discrimination and retaliation by an employer against its employee. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-3(a). Title VII defines an "employee" as "an individual employed by an employer. . . ." 42 U.S.C. § 2000e(f). The Seventh Circuit has held that "[i]ndependent contractors are not protected by Title VII." *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). In order to determine whether the plaintiff was an employee of the defendant employer or an independent contractor, the court must consider the following factors: "(1) [t]he extent of the employer's control and supervision over the worker, including

directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations." *Worth v. Tyer*, 276 F.3d 249, 262-63 (7th Cir. 2001). The most important factor is the degree of control over the plaintiff's work. *Id*. (stating that "[i]f an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist")(quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir. 1979)).

Albahrani argues that she is not an independent contractor, but rather that she is an employee of the City. However, Albahrani fails to allege in the second amended complaint that the City hired her as anything other than an independent contractor and, in fact, the second amended complaint contains numerous references stating that Albahrani is not an employee of the City. For example, although Albahrani contends that her work was controlled by the City, Albahrani admits that her duties as a consultant came about due to "work under contracts with CDOT." (Ans. 20). In addition, Albahrani has stated that the City, through CDOT, "awards *contracts* for federally assisted construction projects," (SA Compl. Par. 10)(emphasis added), and that Plaintiffs "have been requesting *contracts*," (SA Compl. Par.

13

17)(emphasis added), with the City. *See also* (SA Compl. Par. 21, 23, 26)(alleging that Albahrani worked with the City due to contracts rather than being hired as an employee). Albahrani further states that she performed work "as a Resident Architect/Engineer on the two *contracts* awarded to TCS," (SA Compl. Par. 21)(emphasis added), and that "CDOT required TCS and Albahrani to file as the consultants awarded the contracts." (SA Compl. Par. 26). Albahrani has also admitted that her work with CDOT was based upon her role as the principle of TCS and not due to her employment status with the City. (SA Compl. Par. 30). Finally, Albahrani has admitted that CDOT accepts many contracts based on the bid amount. The amount paid to Albahrani by TCS, as well as the work performed by Albahrani, are thus dictated by the terms of TCS' contract with CDOT, which does not have control over the price paid to the workers under those contracts. Thus, although Albahrani contends that she was an employee whose work was controlled by the City, Albahrani has pled facts that admit that she was an independent contractor. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)(stating that a complaint which otherwise states a claim will be dismissed "the plaintiff pleads itself out of court-that is, admits all the ingredients of an impenetrable defense"); *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995)(stating that a "plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts"); *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)(stating that in deciding a Rule 12(b)(6) motion the district court shall consider the entire complaint and is not required to overlook facts

14

alleged that might support a dismissal). Therefore, we grant the Defendants' motion to dismiss the Title VII claim brought against the City (Count III).

IV. EPA Claims (Count IV)

The City also argues that Albahrani's EPA claim fails because Albahrani is not an employee of the City. The EPA provides, in pertinent part, that "no employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex." 29 U.S.C. § 206 (d)(1). In order to establish a prima facie case under the EPA, a plaintiff must show that: "(1) different wages are paid to employees of the opposite sex; (2) the employees do equal work which requires equal skill, effort, and responsibility; and (3) the employees have similar working conditions." *Fallon v. Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989). As such, the key inquiry to determine if Albahrani has successfully pled an EPA claim is whether Albahrani is an employee of the City. As stated above, Albahrani has pled facts that admit she was an independent contractor that performed work for the City on a contractual basis and that she was not an employee of the City. Therefore, we grant the Defendants' motion to dismiss the EPA claim brought against the City (Count IV).

V. Remaining State Law Claims

In regard to the remaining state law claims (Counts V through IX), the Seventh Circuit has stated that where a court dismisses a federal claim and the sole basis for invoking federal jurisdiction has become nonexistent, that court should generally not exercise supplemental jurisdiction over remaining state law claims. *See Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)(stating that if there is a dismissal of the original jurisdiction claim and only a supplemental jurisdiction claim remains, "the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). In addition, under Subsection (c)(3) of Section 1367 of Title 28, United States Code, a federal district court may dismiss a plaintiff's supplemental state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to dismiss supplemental claims is discretionary. *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997). In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir. 1994).

In the instant action, having dismissed Counts I through IV of the second amended complaint, which were the sole basis for this court's jurisdiction, we must decide whether to retain jurisdiction to hear Plaintiffs' state law claims included in Counts V through IX. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999)(stating it is within the discretion of the district court to retain or refuse supplemental jurisdiction over remaining state law claims when the federal law claim fails). According to the complaint, both Plaintiffs and Defendants are domiciled in Illinois, thereby destroying federal diversity subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (stating that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . *citizens of different States*")(emphasis added). In addition, we have considered the relevant factors indicated above and have determined as a matter of discretion to decline to exercise supplemental jurisdiction over the state law claims included in Counts V through IX. Based on the analysis above, we dismiss the instant action.

It is clear, based upon the allegations in this case, that Plaintiffs are unhappy about the volume of contracts granted to TCS and have concluded without any evidence that the lack of awards is based upon national origin or gender discrimination. Plaintiffs have not alleged the operative facts that would indicate that such discrimination occurred and Plaintiffs' own contradictory statements regarding awards defeat their claims of unlawful discrimination. *See Edwards v. Snyder*, 478

F.3d 827, 830 (7th Cir. 2007)(stating that a "complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery").

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss (Counts I through IV). We also decline to exercise supplemental jurisdiction over the remaining state law claims (Counts V through IX) and dismiss the instant action.

_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: April 5, 2007